In the Matter of ANDREW ALBAN et al., Appellants, v COUNTY OF NASSAU, Respondent.

Second Department, November 1, 1982

APPEARANCES OF COUNSEL

*Conroy, Giorgio, DePoto & Merritt (William Merritt* of counsel), for appellants.

*Edward G. McCabe, County Attorney (Kathryn Driscoll Hopkins* of counsel), for respondent.

OPINION OF THE COURT

LAZER, J.

A county which has made payment for the current educational expenses of handicapped children on the basis of a rate schedule promulgated for an earlier year may be required to pay additional sums if the Commissioner of Education issues a new schedule for the current year. If the new rate schedule is issued after the expiration of the school year, claims for additional payments must be filed within a reasonable time after that issuance. The rationale for the general rule which requires claims to be made

within the school year during which the services are rendered loses its validity when the Commissioner of Education does not issue the appropriate rates in a timely fashion.

The five petitioners in this case are handicapped children who received educational services from the Nassau County Center for the Developmentally Disabled during the months of July and August, 1979, a period within the 1979-1980 school year.[*] Between May and November, 1979, petitions were filed on behalf of these children seeking an order from the Family Court approving the payment of tuition and maintenance by the County of Nassau (see Family Ct Act, § 236). After finding the children to be in need of special educational services, payment by the county was directed by the Family Court in orders issued between May and December of 1979. The orders were based on the tuition and maintenance rates set by the Commissioner of Education on July 15, 1978 for the 1977-1978 school year ($7,533 and $12,302 annually), with payments being one tenth of the annual rates for each month in which services are provided. Nassau County promptly paid the charges and presumably sought reimbursement for one half of the expense from the State (see Education Law, § 4406, subd 2). Subsequently, the Commissioner of Education issued new increased rates for the Nassau center as follows:

| Date Issued | School Year | Tuition | Maintenance |
|---|---|---|---|
| July 25, 1979 | 1977-1978 | $10,057 | $13,921 |
| November 1, 1979 | 1978-1979 | $10,593 | $17,116 |
| November 9, 1979 | 1979-1980 | $12,496 | $20,970 |
| October 21, 1980 | 1979-1980 | $14,524 | $25,984. |

In December, 1980, the instant petitions were filed on behalf of the children by the Nassau center seeking an increase in reimbursement for services rendered in the summer of 1979 based on the differential between the new and old rates. Although the county opposed the petitions, the parties were able to enter into an agreed statement of facts which were submitted to the Family Court.

---

[*] It has been agreed that 78 other children who are similarly situated will be bound by the decision in this case.

The Family Court granted the county's motion to dismiss the petitions on the grounds that (1) there is no specific statutory authority for a supplemental application, (2) the application of amended rates would result in fiscal irregularity, (3) tuition and maintenance rates may not be amended retroactively, (4) the petitions were filed after the expiration of the school year for which the educational services were rendered, and (5) the county has no authority to pay the additional claims. We conclude that the Family Court erred and that the county must pay tuition and maintenance according to the latest rate for the 1979-1980 school year.

Section 236 of the Family Court Act authorizes the Family Court to issue suitable orders for the education of handicapped children who are under the age of five or are attending summer school (see *Matter of Scott K.*, 92 Misc 2d 681; *Matter of Pavone,* 88 Misc 2d 675). This section was specifically developed to satisfy the eligibility requirements of Federal law, including the requirement that special educational services be provided to handicapped children at no cost to the parents (see US Code, tit 20, § 1400 *et seq.; Matter of Jones,* 98 Misc 2d 562; *Matter of J.F.,* 91 Misc 2d 445). Moreover, the State Constitution guarantees to all children, handicapped or not, the right to a free education (NY Const, art XI, § 1; *Matter of L. v New York State Dept. of Educ.,* 39 NY2d 434; *Matter of Levy,* 38 NY2d 653). The educational expenses of handicapped children are equally shared by the county in which the child is domiciled and the State (Family Ct Act, § 236, subd 2; Education Law, § 4406) and the Commissioner of Education is mandated to determine annually a tuition rate for each private school, subject to the approval of the Director of the Budget (Education Law, § 4405, subd 3, par d). Prior to July 1, 1981, maintenance rates were also set by the commissioner (Education Law, § 4401, subd 3). The regulations provide the mechanism for determining the appropriate rate (see 8 NYCRR former 200-1.13, 200-2.9 [renum 200.9]). This legislative scheme clearly envisions that a "suitable" order be fashioned by the Family Court in accordance with the commissioner's rates for the period in question, and not an earlier period. Hence, we hold that

section 236 of the Family Court Act contains the implied authority for the Family Court to adjust its reimbursement orders should an adjustment become necessary, as when the commissioner issues a new rate applicable to the period during which the educational services were furnished.

For the same reasons, we believe that allowable rates may be amended retroactively. "The educational needs of handicapped children and the techniques utilized are in constant change and expansion" (*Dubendorf v New York State Educ. Dept.,* 97 Misc 2d 382, 390, mod on other grounds 71 AD2d 837, mot for lv to app dsmd 48 NY2d 829). While the failure of the commissioner to comply with his own regulations in the timely setting of rates is not condonable, his failure should not serve as a basis for annulling the amended rates (see *Matter of Organization to Assure Servs. for Exceptional Students v Ambach,* 105 Misc 2d 269). Our refusal to annul the amended rates is consistent with the goal of the educational system for handicapped children — "[t]o stimulate all private and public efforts designed to relieve, care for or educate handicapped children" (Education Law, § 4403, subd 2). In fact, the regulations existing at that time contemplated the possibility of amended rates by giving the school an opportunity to apply for a readjustment (see 8 NYCRR former 200.13 [a]). Furthermore, schools could be reimbursed for "[i]nterest costs necessarily incurred as a result of an unreasonable delay by a State agency in the rate certification process" (8 NYCRR former 200.13 [g]).

The county's resistance to upward modification is based on the alleged untimeliness of the petitions. In *Matter of L. v New York State Dept. of Educ.* (39 NY2d 434, *supra*), the court held that parents who have paid the tuition for the special education of their handicapped children are obligated to seek reimbursement within the school year for which the tuition was paid. Writing for the court majority, Judge JASEN reasoned that (1) the failure to present claims within the school year for which reimbursement was sought deprived the Family Court of its duty to continually and meaningfully review the condition of the children and the state of available public facilities (p 439); (2) without a time limitation, local governments would face "budgetary

chaos" since the locality would not be able to budget for these claims in an adequate manner (p 441); and (3) the regulations setting time limits for localities to file for partial reimbursement from the State would prevent such reimbursement if the children's claims were not timely filed (p 441). In our view, *Matter of L. v New York State Dept. of Educ.* is distinguishable since we regard its rationale as inapplicable to a petition for modification of an earlier claim for educational expenses.

When *Matter of L. (supra)* was decided, the Family Court had jurisdiction over the education of all handicapped children under the age of 21 years (see Family Ct Act, former § 232). Subsequently, the court's jurisdiction was diminished by an amendment to the Family Court Act (L 1976, ch 853), which vested local boards of education with much of the review function formerly held by the Family Court (see Education Law, § 4402). Whatever the vitality of the Family Court's current review function (compare *Matter of Lape,* 108 Misc 2d 271, with *Matter of Charles M.,* 100 Misc 2d 803), the instant court had ample opportunity to afford meaningful review to the original petitions which were timely commenced under the rule in *Matter of L.* The modification petitions do not require additional review of each child's condition since only the rate of reimbursement is in issue and the services in question were already rendered in full.

Nor do we believe that "budgetary chaos" would result if the petitioners were to be reimbursed in accordance with the final rate for the year in which the services were rendered (cf. *Matter of L. v New York State Dept. of Educ., supra,* p 441). The County of Nassau was well aware that the educational services in question were rendered in the 1979-1980 school year and that the Family Court ordered payment based on the rate for the 1977-1978 school year. Since the Commissioner of Education must annually set rates for each private school (Education Law, § 4405, subd 3, par d), the county could and should have anticipated that new tuition and maintenance rates for the 1979-1980 school year would eventually be issued. *Matter of L.* was designed to protect localities from claims accumulating over several years, since prior to the receipt of applications

for reimbursement the governmental entities would have little idea as to the number of children involved or the years in which the services were rendered. Here, on the other hand, the county knew when the services were furnished and the number of children involved, and could have foreseen the approximate increase in rates from year to year based on past experience. Thus, the county could have set aside additional funds for these claims, knowing that additional charges would be forthcoming.

*Matter of L.*'s final predicate concerns the preclusive effect untimely claims would have on the ability of localities to obtain reimbursement from the State. The commissioner's regulations provide that reimbursement claims must be submitted to the Department of Education "not later than 12 months from the date on which a certificate of approval for State aid was issued, or 12 months from the last day of the school year within which special educational services were provided, whichever is later" (8 NYCRR former 200-1.11 [d], 200-2.8 [d] [renum 200.8 (d)]). In the instant case, the modification petitions were filed less than six months after the last day of the school year in which the educational services were provided, so ample time existed for the county to file a timely claim for reimbursement with the Department of Education. In any event, under the circumstances described, enforcement of the commissioner's time limitation would be inconsistent with the purposes of the legislative scheme. As part of the statutory goal of assuring that appropriate educational services be provided to all handicapped children (Education Law, § 4403, subd 2; Governor's Memorandum, NY Legis Ann, 1976, p 414), the ability of private schools to render such services is fostered by payment for these services based on current financial data (see 8 NYCRR 200-2.9). In the current circumstances, no handicapped child could have brought a "timely" modification petition within the school year as required by *Matter of L.* because the rates which triggered the requests for modification still had not been promulgated when the school year ended.

Finally, we reject the county's claim that it is without authority to pay the additional charges. Its contention ignores the clear mandate that such charges are a legiti-

mate cost to be paid by the county in the first instance (Family Ct Act, § 236, subd 2). There is no doubt that the children in this case are handicapped and entitled to a tuition-free education. It is also beyond dispute that as between the school and the county, the latter is responsible for the expenses of the education of these children. Only the amount and timeliness of the claims for reimbursement are in controversy. In our view, the law should not be read to penalize the children and their schools when the commissioner promulgates rates in an untimely fashion. Since the modification proceedings were commenced within a reasonable time after the issuance of the final rates, the county's objection based upon timeliness is meritless. The merits of the petitions having been established on undisputed facts, the county is directed to make payment of tuition and maintenance in accordance with the latest rates for the 1979-1980 school year.

Accordingly, the order of the Family Court should be reversed and the petitions granted.

DAMIANI, J. P., BROWN and NIEHOFF, JJ., concur.

Order of the Family Court, Nassau County, dated July 31, 1981, reversed, on the law, without costs or disbursements, motion to dismiss denied, petitions granted, and the County of Nassau is directed to make payment of tuition and maintenance in accordance with the latest rate for the 1979-1980 school year.